■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD BOTTERI, Appellant.—Judgment, Supreme Court, New York County, rendered on November 20, 1974, after a jury trial, convicting defendant of the crimes of rape in the first degree, sexual abuse in the first degree and sodomy in the first degree, unanimously reversed, on the law, and on the facts and a new trial directed. In this close case the critical issue which the jury was called upon to resolve was that of consent. On two occasions, about seven hours apart, the jury inquired as to the "Definition of earnest and reasonable resistance and degree of same", and "What constitutes earnest resistance? How much resistance is considered earnest resistance". The trial court erred in merely rereading to the jury subdivision 8 of section 130.00 of the Penal Law and that portion of his original charge which the jury had obviously found inadequate or confusing. Such instructions did not answer the highly pertinent questions posed by the jury and a further explanation should have been made, especially in view of the sharp issue of consent. In this connection the language of the court in *People v Gonzalez* (293 NY 259, 262–263), is particularly pertinent. " 'It is immaterial that the court has already charged the jury upon the law of the case generally, or has given instructions which would answer the request of the jury. The very fact that the jury, after having been in consultation, have failed to comprehend the instructions given in the charge and request further instructions, is of itself sufficient to show the necessity of additional instructions. As we have said above, if the jury do not understand the instructions, or are ignorant or uncertain as to the law applicable to any part of the case, the charge is inadequate and fails of its purpose, which is to advise the jury fully and clearly upon the law applicable to each and every part of the case.' That clear statement disposes of the contention made in the present case that the court dealt adequately with the submitted question when he offered to read to the jury any desired part of his original charge." On the cross-examination of defendant the prosecutor brought out an incident in which the defendant was involved and which took place in 1961. The defendant

admitted that, at that time, he had followed one, Ruth Zobel, and had forced her to give him her pocketbook. No question of sexual molestation was involved. It was a simple pocketbook snatch. Yet, by the cross-examination of the defendant, the prosecutor attempted to give the impression that the details of the Ruth Zobel incident were analogous to the details of the instant case. If there had been any doubt as to her purpose the prosecutor removed it by what she said to the jury in the course of her summation. We quote from the record: "Now, [complainant] is screaming, she is on the bed, and he very rapidly penetrates the vaginal area. Then [appellant] clamps his hand over her mouth and tells her not to scream, just as he did Ruth Zobel in 1961 in Queens. * * * Susan [complainant] has never done anything to hurt anyone either; the defendant has, because he told you himself that he ran up stairs behind Ruth Zobel, clapped his hand around her mouth and around her waist". This conduct of the prosecutor obviously was intended to persuade the jury that, since the defendant had used force to steal the pocketbook, he must have used force against the complainant in this case, thereby expecting the jury to find a lack of consent. It was most unfair for the prosecution to have used such an argument. Concur—Stevens, P. J., Lupiano, Tilzer, Capozzoli and Yesawich, JJ.