**WASHINGTON HOSPITAL
CENTER, Appellant,**

v.

**Alice MARTIN, Appellee.**

**No. 81–1320.**

District of Columbia Court of Appeals.

Argued Oct. 7, 1982.

Decided Nov. 30, 1982.

---

James P. Schaller, Washington, D.C., for appellant. Richard W. Bryan, Washington, D.C., also entered an appearance for appellant.

Raymond L. Poston, Jr., Washington, D.C., for appellee.

Before MACK, PRYOR and TERRY, Associate Judges.

TERRY, Associate Judge:

Appellee, a 93-year-old woman, was admitted to the Washington Hospital Center for treatment of a fractured right hip. Several days later, while still on post-operative care after surgery on her right hip, she fell from her bed and fractured her left hip. Appellee sued the hospital, alleging that it had been negligent in leaving her unattended and in failing to protect her from falling out of bed. A jury returned a verdict in her favor and awarded damages. The hospital brings this appeal, arguing that the trial court erred (1) in treating this case as one of ordinary negligence, rather than one involving the exercise of professional medical judgment and requiring appellee to present expert testimony, which she did not do,[1] and (2) in instructing the jury on the doctrine of *res ipsa loquitur*. We reject both arguments and affirm the judgment of the trial court.

I

Eartha Massey, a licensed practical nurse employed by the hospital, testified that she was at the nurses' station one afternoon, between 4:00 and 5:00 p.m., when she heard a "thump" in appellee's room. She went to investigate and found appellee sitting on the floor. Returning to the nurses' station, Massey told Sharon Miller, a registered nurse, that appellee had fallen. Both nurses went to appellee's room and, after examining her, placed her back in bed and called the doctor.

Nurse Miller corroborated Massey's testimony. In addition, she said that earlier in the afternoon, "around 3:00," she had stopped by appellee's room to check on her and found her sitting up in a geriatric chair.[2] Appellee told her that she was feeling fine but that she was tired and wanted to go back to bed, so Miller asked Gail Johnson, a student nurse, to help appellee get back in bed and put her in restraints, which her doctor had prescribed for her.

There was no direct evidence on the issue of whether appellee was in restraints at or immediately before the time she fell, since neither appellee nor Nurse Johnson testified. Nurse Miller said that she believed appellee must have been in restraints prior to her fall, because when she and Nurse Massey went to appellee's room to put her back in bed, they had to lower the side rails on the bed. Her belief was buttressed by the fact that the wrist restraints were tied to the side rails, since these restraints could not be tied to the rails unless the rails were up. Miller was impeached with a report she had written which stated that appellee "was left unrestrained on a.m. shift," although she offered an explanation for this apparently inconsistent statement. She also admitted that there was nothing in her report or in any other hospital record indicating that the side rails were up or that appellee had been in restraints before she fell.

Other evidence established that appellee was, at least some of the time, confused and disoriented during her stay in the hospital, and that she had a history of slipping out of her restraints and trying to get out of bed, although she never succeeded. Appellee's doctor, an orthopedic surgeon, read from a nursing protocol signed by the hospital's Chief Assistant Administrator for Nursing,[3] which said that patients should be checked

---

1. The testimony of a witness whom appellee proffered as an expert was excluded by the trial court for reasons unrelated to this appeal.

2. A geriatric chair was described as "a wheel chair with a table on top of it," similar in design to a child's high chair.

3. According to the doctor, a nursing protocol was "a manual for nurses, written by nurses."

"at least every half-hour" while in restraints. The doctor was then asked whether checking up on a patient one hour after restraints had been applied, when that patient had a history of removing her restraints, would fall below a reasonable standard of care for the nurses. He replied, "If the patient was a known crawler-outer and escapee from restraints, you would like to have the patient seen more often." [4]

## II

In denying appellant's motion for directed verdict, the trial court ruled that appellee had presented sufficient evidence to go to the jury and that expert testimony was not required to establish negligence on the part of the hospital. Appellant contends here, as it did below, that expert testimony was necessary to prove the standard of care before a jury could find that the hospital's acts or omissions did not meet that standard.

■ "[T]o warrant the use of expert testimony, the subject dealt with must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman ...." *Waggaman v. Forstmann,* 217 A.2d 310, 311 (D.C.App.1966); *accord, e.g., District of Columbia v. White,* 442 A.2d 159, 164 (D.C. App.1982). Whether expert testimony is required in a medical malpractice case depends on the particular issues to be resolved by the trier of fact.

> [I]f a case involves the merits and performance of scientific treatment, complex medical procedures, or the exercise of professional skill and judgment, a jury will not be qualified to determine whether there was unskillful or negligent treatment without the aid of expert testimony.

*Harris v. Cafritz Memorial Hospital,* 364 A.2d 135, 137 (D.C.App.1976) (footnote omitted), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977). Although we have held that expert testimony is "[o]rdi-

narily" required in medical malpractice cases when there is an issue as to the proper standard of care, *Sponaugle v. Pre-Term, Inc.,* 411 A.2d 366, 368 (D.C.App.1980), we have also recognized that there are "many such cases [which] do not require expert testimony." *Martin v. Washington Hospital Center,* 423 A.2d 913, 916 (D.C.App. 1980), citing *Washington Hospital Center v. Butler,* 127 U.S.App.D.C. 379, 384 F.2d 331 (1967). "Where laymen can say, as a matter of common knowledge and observation, that the type of harm would not ordinarily occur in the absence of negligence, the jury is allowed to infer negligence without expert testimony being presented." *Harris v. Cafritz Memorial Hospital, supra,* 364 A.2d at 137 (citations omitted).

■ The issue in this case was not whether the doctor correctly prescribed restraints for appellee or whether the nursing staff applied them properly. Those are matters which generally involve professional judgment and skill, and if the exercise of such judgment and skill is at issue, expert testimony would no doubt be needed in an appropriate case. Here, however, the issues before the jury were whether appellee was in fact under restraints immediately prior to her fall and, if not, whether the hospital was negligent in leaving her unattended. The trial court, citing *Washington Hospital Center v. Butler, supra,* concluded that these were not questions on which expert testimony was either necessary or helpful. We agree with the trial court that *Butler* controls this case.

In *Butler* a diabetic patient was injured when she fell from an X-ray table in a hospital as it was rotated to a vertical position during an examination. A doctor's admission note entered on the hospital chart stated that the patient had experienced "recent weakness, dizziness, and near-syncopal episodes for about 8 days." However, the requisition form for the diagnostic tests that the doctor ordered to be performed, which was prepared by a nurse, stated only

---

4. Appellee's theory with respect to this bit of evidence was that even if she had been placed in restraints at approximately 3:00 p.m., her

fall sometime after 4:00 p.m. could have been prevented if she had been checked every half-hour.

"diabetes with complications" in summarizing the patient's history, without any reference to the symptoms described on the chart. In holding that on these facts expert testimony was not required to show that the hospital was negligent, the court drew a distinction between cases in which the issue involves "the merits and the performance of scientific treatment,"[5] requiring expert testimony for its resolution, and "ordinary" negligence cases, in which jurors may apply their own experience in deciding how any reasonably prudent person would have acted under the circumstances. 127 U.S.App.D.C. at 384, 384 F.2d at 336. The instant case, like *Butler,* falls in the latter category. *See also Canterbury v. Spence,* 150 U.S.App.D.C. 263, 286–287, 464 F.2d 772, 795–796, *cert. denied,* 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972).[6]

Recognizing that the *Butler* case seriously undermines its position, appellant attempts to distinguish it by pointing out that there was "clearly no involvement of sophisticated professional judgment in the transactional fact pattern underlying *But-*

*ler"* (Appellant's Brief at 17). But the same can be said of this case. Appellee never asserted that her injuries resulted from the use of restraints;[7] therefore, the exercise of "sophisticated professional judgment" in the application of restraints was not at issue.

■ Appellant suggests that to follow *Butler* in this case would create "a new type of medical negligence case to which the exacting requirement of expert medical testimony would not apply, *i.e.,* the 'fall' case" (Appellant's Brief at 15). We do not go nearly so far. The mere fact that a patient falls in a hospital will not normally determine whether expert testimony is called for in a given case. Some fall cases require expert testimony; others do not. We hold only that in a case such as this, in which the standard of care is simply that which a reasonable and ordinary lay person would expect a hospital to provide to any patient under like circumstances, expert testimony is not needed to withstand a motion for directed verdict.[8]

---

**5.** *Brown v. Keaveny,* 117 U.S.App.D.C. 117, 118, 326 F.2d 660, 661 (1963).

**6.** Numerous cases have held that in an action by a patient against a hospital for injuries sustained in a fall, expert testimony is not required to establish the standard of care. *E.g., Gin Non Louie v. Chinese Hospital Ass'n,* 249 Cal. App.2d 774, 57 Cal.Rptr. 906 (1967) (confused, disoriented patient fell out of bed which had side rails up); *Stepien v. Bay Memorial Medical Center,* 397 So.2d 333 (Fla.Dist.Ct.App.1981) (disoriented patient fell from bed which had no side rails); *McKnight v. St. Francis Hospital & School of Nursing, Inc.,* 224 Kan. 632, 585 P.2d 984 (1978) (75-year-old patient fell when X-ray table was tilted to a vertical position); *Jones v. Hawkes Hospital,* 175 Ohio St. 503, 196 N.E.2d 592 (1964) (sedated patient fell from bed); *Hilzendager v. Methodist Hospital,* 596 S.W.2d 284 (Tex.Civ.App.1980) (patient fell, side rails not raised); *Cramer v. Theda Clark Memorial Hospital,* 45 Wis.2d 147, 172 N.W.2d 427 (1969) (unattended patient whose restraints had been partially removed fell from bed); *see* Annot., 40 A.L.R.3d 515, 542–545 (1971). *But cf. Murillo v. Good Samaritan Hospital,* 99 Cal.App.3d 50, 160 Cal.Rptr. 33 (1979) (court held that failure to raise bed rails in a case in which patient fell from bed and suffered injury would be reviewed under statute of limitations applicable to professional negligence and not ordinary negligence).

**7.** *Compare Schwabach v. Beth Israel Medical Center,* 72 A.D.2d 308, 424 N.Y.S.2d 208 (1980), in which expert testimony was presented on the issue of whether the hospital was negligent in using wrist restraints on the patient while she was in intensive care, thereby causing injury to her wrist.

**8.** Appellant contends that a decision that fall cases do not always require expert testimony will be somehow inconsistent with this court's decision in *Morrison v. MacNamara,* 407 A.2d 555 (D.C.App.1979). Appellant misreads *Morrison.* The plaintiff in that case, while undergoing a urethral smear examination in a standing position, fainted and struck his head on a metal stand and on the floor, causing serious injury. Experts testified that according to the national standards established for this type of examination, the patient should have been sitting or lying down when it was administered. Both at trial and on appeal, the principal issue was whether the applicable standard of care was that of the entire nation or of the immediate locality; we held that the national standard applied. Insofar as *Morrison* is pertinent to this case, it is distinguishable. In *Morrison* the issue was whether it was good medical practice to administer the test to a standing patient. To do so involved an exercise of medical judgment, and thus expert testimony was appropriate. In the case at bar, however, no claim was

**310**

## III

We may quickly dispose of appellant's contention that a *res ipsa loquitur* instruction should not have been given. "The doctrine of *res ipsa loquitur*, when applicable, permits the jury to infer negligence from the mere occurrence of an accident." *Quin v. George Washington University,* 407 A.2d 580, 582 (D.C.App.1979). The jury is not required to draw the inference, however, even if the plaintiff's entire case is based on a *res ipsa loquitur* theory. The burden of proof always remains with the plaintiff. *United States Fidelity & Guaranty Co. v. Doctors Hospital,* 265 A.2d 774, 776 (D.C.App.1970); *Lathon v. Hadley Memorial Hospital,* 250 A.2d 548 (D.C.App.1969); *Powers v. Coates,* 203 A.2d 425 (D.C.App. 1964).

The propriety of a *res ipsa loquitur* instruction in a fall case, when the facts warrant it, finds implicit support in our decision in *Harris v. Cafritz Memorial Hospital, supra.* In discussing the applicability of *res ipsa* to a medical malpractice claim, we specifically cited *Washington Hospital Center v. Butler, supra,* which is of course a fall case. *See* 364 A.2d at 137 & n. 3. Whether the instruction should have been given in the case at bar, however, is a matter we need not decide, because we conclude that in any event appellant was not prejudiced by it. The jury was aware of appellee's advanced age, her sometimes confused mental state, and her generally weakened condition. It also knew that on prior occasions she had slipped loose from her restraints and attempted unsuccessfully to get out of bed. There was evidence that she was left unattended for more than an hour, despite an instruction in the nursing protocol that restrained patients should be

checked at least once every half-hour. Finally, the jury could have found that the bed rails were either up or down, for there was evidence both ways. In these circumstances, appellant suffered no prejudice from the giving of the instruction, because the jury would readily have found negligence without it. *See Gin Non Louie v. Chinese Hospital Ass'n, supra* note 6, 249 Cal.App.2d at 794–796, 57 Cal.Rptr. at 920– 921.[9]

*Affirmed.*

---

made that appellee's fall was the result of an erroneous *medical* decision.

**9.** The instruction actually given by the trial court was incomplete. The doctrine of *res ipsa loquitur* applies when three conditions are met: "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due

to any voluntary action on the part of the plaintiff." W. Prosser, Handbook of the Law of Torts § 39, at 214 (4th ed. 1971), cited with approval in *Sullivan v. Snyder,* 374 A.2d 866, 867–868 (D.C.App.1977). The trial court's instruction failed to mention the third of these requirements. At oral argument, however, appellant specifically waived any claim of error with respect to this omission.