547 N.W.2d 654 (1996)
Sarah GARABEDIAN, Plaintiff-Appellant,
v.
WILLIAM BEAUMONT HOSPITAL, Defendant-Appellee.
No. 102571, COA No. 159869.
Supreme Court of Michigan.
January 19, 1996.

ORDER
On order of the Court, the application for leave to appeal is considered, and it is DENIED, because we are not persuaded that *655 the questions presented should be reviewed by this Court.
LEVIN, J., states as follows:
I would grant leave to appeal.
Sarah Garabedian, eighty-seven at the time of her injury, visited the emergency room at William Beaumont Hospital because of a severe headache and sudden blindness. Her daughter, Ms. Agnes Nassar, accompanied her. Nassar said that Garabedian was disoriented in the emergency room after having been given Demerol for pain and two diuretics for high blood pressure. Nassar informed the nursing staff that her mother was "out of it" and asked to stay with her mother. Her request was denied, and she was permitted to see her mother for five minutes an hour.

I
Garabedian fell out of bed and fractured her hip. Garabedian has no recollection of the circumstances of her injury.
The Court of Appeals[1] set forth the following additional facts:

Concerned that the side rails on plaintiff's bed were not up, Ms. Nassar told the nurses she felt plaintiff was going to fall off the bed. The nurses said they were watching her. However, plaintiff did fall off the bed and an x-ray showed that she broke her hip.
Registered nurse Sharon LaMarre testified that to comply with the standard of care, a registered nurse is required to conduct a nurse's assessment, which in this case would include an ongoing assessment of plaintiff's mental condition. Her review of plaintiff's medical record indicated that such an assessment was not made. LaMarre further opined that an evaluation of plaintiff's mental condition might have indicated a need for some type of intervention. For example, having a family member or a nurse stay with the patient. LaMarre concluded that, had such intervention occurred in this case, the accident might have been prevented.[2] [Emphasis added.]
The Court of Appeals in affirming a directed verdict for the defendant, said:
Because plaintiff does not recall how she fell from the bed, and because there were no witnesses to the fall, plaintiff must rely on circumstantial evidence to establish the causal link between defendant's alleged negligence and the harm suffered. Skinner v. Square D Co, 445 Mich. 153, 163; 516 NW2d 475 (1994). "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." Id. at 164 [516 N.W.2d 475]. According to LaMarre's testimony, if plaintiff had been adequately evaluated, the evaluation might have revealed a need for intervention, and that intervention might have prevented plaintiff's injury. Plaintiff's attenuated theory of causation does not establish a reasonable basis for concluding that it is more likely than not that conduct by defendant's employees was the cause of plaintiff's injury. Id. at 165 [516 N.W.2d 475]. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Id. We cannot conclude that plaintiff's injury is attributable to defendant's alleged failure to evaluate and chart plaintiff's condition. Boyd v. Wyandotte, 402 Mich 98, 105; 260 NW2d 439 (1977). *656 [208 Mich App 473, 475-476, 528 N.W.2d 809 (1995).]

II
I find the following analysis of the dissenting Court of Appeals judge to be more persuasive:
Viewing the evidence in a light most favorable to plaintiff, and permitting every reasonable inference in her favor, I would find that plaintiff presented sufficient evidence of causation to withstand a motion for a directed verdict.
According to plaintiff's proofs, before falling off the stretcher, plaintiff experienced a severe headache, loss of sight in her right eye, placement in a dark room to reduce eye strain, an x-ray, a computerized axial tomography scan, a lumbar puncture, insertion of an intravenous needle, and administration of a sedative and two diuretics. In addition, plaintiff's daughter, Agnes Nassar, was permitted to sit with plaintiff for only five minutes each hour, notwithstanding the fact that Nassar had expressed concern to the nurses that plaintiff might fall from bed because plaintiff was "out of it," her bedside rails were not raised, and she was not otherwise restrained. In light of these facts, coupled with plaintiff's advanced age and disoriented condition, it was beyond mere speculation that she might attempt to get up and go to the bathroom without asking for assistance. Thus, plaintiff's proofs were sufficient to establish a prima facie case that the nursing staff was negligent in failing to appropriately assess and monitor plaintiff's condition and that, had they done so, plaintiff's, injuries more than likely would have been prevented.
The majority's reliance on Boyd v. City of Wyandotte, 402 Mich 98; 260 NW2d 439 (1977), is mistaken. The Boyd Court held that, under the circumstances of that case, a physician's failure to maintain adequate records of a patient's treatment was not a proper theory of recovery under negligence principles. Id. at 104-105 [260 N.W.2d 439]. Here, plaintiff's theory is that defendant's employees were negligent in failing to assess and monitor her condition consistent with the appropriate standard of care and that, had they done so, it was more than likely that her injury would not have occurred. The majority is therefore mistaken when it relies on Boyd as support for the proposition that plaintiff's injury in this case was not "attributable to defendant's alleged failure to evaluate and chart plaintiff's condition." Ante, p 476 [528 N.W.2d 809].
Plaintiff's circumstantial proofs were sufficient to permit a reasonable jury to infer a logical and substantial nexus between defendant's alleged negligence and plaintiff's injuries. See, e.g., Washington Hosp Center v. Martin, 454 A2d 306 (DC App, 1982); Osborn v. Public Hosp Dist 1, 80 Wash 2d 201; 492 P2d 1025 (1972); Norris v. Rowan Memorial Hosp, Inc, 21 NC App 623; 205 SE2d 345 (1974). [Id. at 476-478 [528 N.W.2d 809] (Holbrook, Jr., J., dissenting).]
CAVANAGH, J., would grant leave to appeal.
NOTES
[1] 208 Mich.App. 473, 528 N.W.2d 809 (1995).
[2] Id. at 474, 528 N.W.2d 809. LaMarre also testified that most of the observation was done by a licensed practical nurse, although guidelines (American Nurses Association, and the Joint Commission for Accreditation of Hospitals) called for a registered nurse's attention. If a licensed practical nurse makes the observations, the nurse is to report to a registered nurse, who will make an assessment. Assessments were not made here by a registered nurse.

The registered nurse is then supposed to make goals, on the basis of the observations, and plan interventions. This was not done, either. If it had been done, the nurses might have seen that Garabedian was agitated and perhaps not fully aware of her surroundings, and that measures needed to be taken to ease her agitationsoft restraints, medication, the presence of a family member, or increased nursing supervision. Any of those might have prevented the injury.