MAXWELL, J.,
dissenting:
¶ 22. Not every act or omission by a medical professional is a professional act. With that in mind, I find it important that Crosthwait does not allege Nurse Morgan failed to assess and meet her medical needs. Instead, Crosthwait complains that, in assisting her with her shower, Morgan created a peril — a wet bathroom floor. And Morgan, allegedly knowing that approximately an inch of water had pooled on the bathroom floor, failed to attempt to dry the floor or respond to repeated requests to assist the eighty-two year old barefooted Crosthwait across the wet floor. Because I find Crosthwait brings an ordinary negligence claim, not a medical-malpractice action, I respectfully dissent.
FACTS
¶ 23. At this summary-judgment stage, many of the facts forming Crosthwait’s theory are sharply contested by the hospital. But it is undisputed that Crosthwait, while a patient at Trace Regional Hospital, was under doctor’s orders to call for assistance when going to and from the bathroom. During the course of her stay, Crosthwait called for assistance and made many uneventful bathroom trips. Before leaving the hospital, Crosthwait wanted to take a shower and called for Morgan’s assistance. Crosthwait and Morgan have differing accounts of what happened next.
¶ 24. Crosthwait’s deposition testimony reflects that Morgan helped her undress and turned on the shower. Because of the height of the shower faucet, Morgan suggested a shower chair. Crosthwait testified the chair did not fit in the shower. After several placements, Morgan ultimately positioned the chair so that a portion of it and Morgan stuck out of the shower. Morgan then left to give another patient an insulin shot. Crosthwait testified that, because of the protruding chair, the shower curtain did not close. And during the five minutes Morgan was gone, the continuous running water began pooling on the bathroom floor. Crosthwait cannot remember whether she or Morgan turned off the shower. But she recalls Morgan returned to the bathroom and handed her a towel, which Crosthwait used to dry herself. Crosthwait asked Morgan for rubber-soled shoes because her leather-soled shoes had been left in the bathroom during the shower and were soaked. Morgan replied that the hospital did not have any. Crosthwait testified that Morgan stood outside the bathroom and did not respond to her repeated requests to help her out of the bathroom. So the barefoot Crosthwait attempted to leave unassisted. She began to fall, at which point, Morgan grabbed her arm and tried to prevent her fall.
¶ 25. Morgan’s account differs. The treating physician’s notes reflect that when Crosthwait “was about to take a bath [she] apparently slid down from the bed towards the floor and she was witnessed by the nurse.” But Morgan could not recall telling the doctor that Crosthwait had slid from the bed to the floor. Instead, Morgan’s deposition testimony clearly established that Crosthwait’s injury occurred from a fall after her shower.
¶ 26. Morgan testified in her deposition that before turning on the shower she *1134 placed towels on the floor. After situating Crosthwait on the shower stool and turning on the shower, Morgan left to give another patient an insulin shot. Morgan returned and turned off the shower. She then placed two more towels on the floor. As she was physically assisting Crosthwait out of the bathroom, Crosthwait fell.
¶ 27. If Crosthwait’s allegations are considered under ordinary negligence standards, I find these factual disputes preclude summary judgment. So the proper starting point is to determine whether her claim sounds in ordinary negligence or medical malpractice.
LAW AND DISCUSSION
¶ 28. In previous cases addressing this distinction, this court has emphasized the “main issue [is] whether the tort ‘arises out of the course of medical, surgical or other professional services.’ ” Chitty v. Terracina, 16 So.3d 774, 779 (¶ 12) (Miss.Ct.App.2009) (quoting Miss.Code Ann. § 15-1-36(2) (Rev.2003)); see Bell v. W. Harrison County Dist., 523 So.2d 1031, 1032 (Miss.1988) (addressing “arising out of’ language in section 15-1-36).[3] We have also looked for guidance in addressing that issue to Louisiana’s six-factor test from Coleman v. Deno, 813 So.2d 303, 315-16 (La.2002). Chitty, 16 So.3d at 778; Howell v. Garden Park Cmty. Hosp., 1 So.3d 900, 903-04 (¶¶ 7-8) (Miss.Ct.App.2009). Among Coleman’s considerations are whether the alleged wrong (1) is treatment related or caused by want of professional skill, (2) involved an assessment of the patient’s condition, or (3) was within the scope of activities a hospital is licensed to perform. Coleman, 813 So.2d at 315— 16. Coleman also includes in its test the question of whether expert testimony would be required to establish the standard of care. Id. at 315.
¶ 29. Using Coleman as a guide, I do not find Crosthwait alleges an injury “arising out of the course of medical, surgical or other professional services where expert testimony is [required].” Miss.Code Ann. § 11-1-58(1). Although her doctor determined her medical condition required asking for assistance to the bathroom, Crosthwait does not allege her injury was caused by her doctor’s failure to properly assess her medical needs. And Crosthwait does not contend her injury was caused by medical treatment or Morgan’s want of professional skills.
¶ 30. The majority frames Crosthwait’s allegations as claiming Morgan negligently made two professional assessments: (1) Crosthwait’s medical condition necessitated an ill-fitting stool to take a shower, and (2) Crosthwait, based on her medical condition, did not need assistance across a wet bathroom floor. The majority finds that expert testimony is needed to determine whether both assessments were negligent.
¶ 31. I disagree. The injury here did not involve a negligent assessment of Crosthwait’s condition. Rather, Crosth-wait alleges her injury arose out of a dangerous condition created by Morgan — a wet bathroom floor. And drying a wet floor or ensuring hospital patients traverse safely through a known, dangerous condition does not fall within the scope of either a hospital’s licensed activities or Morgan’s professional services. Instead, it falls within the standard of reasonable care incumbent on hospitals and, for that matter, any business.
¶ 32. Morgan admitted in her deposition that she did not “have to know any *1135 thing as a nurse to do anything that [she] did in connection with this incident of getting [Crosthwait] in and out of the shower.” Because Morgan’s testimony illustrates she was not drawing on any medical skills during the shower incident, I am left wondering what type of medical expert the majority would have Crosthwait offer to establish the appropriate standard of care. In this case, I simply find a jury does not require expert testimony to determine what a reasonable person in Morgan’s position would have done in these circumstances.
¶ 33. This case is certainly distinguishable from cases this court and the Mississippi Supreme Court have found to fall ■within medical-malpractice statutes and require expert testimony. In Chitty, the plaintiffs claim arose out of what she alleged was an unnecessary biopsy and a fraudulent diagnosis of cancer. Chitty, 16 So.3d at 775-76 (¶ 4). So the rendering of a profession medical services itself was the source of the alleged injury. Id. at 779 (¶ 13). And expert testimony was required to determine whether a reasonable dermatologist would have performed a biopsy. Id. Here, Crosthwait was not undergoing a medical procedure. Cf. Kastler v. Iowa Methodist Hosp., 193 N.W.2d 98, 101-02 (Iowa 1971) (holding that a hospital’s giving showers to its patients is not a professional activity).
¶ 34. Howell involved a patient’s fall. Howell, 1 So.3d at 901-02 (¶ 2). But in Howell, the patient fell from a piece of medical equipment — an X-ray table — during the performance of a medical procedure — a cervical X-ray requiring the plaintiff to lie in an inverted position. Id. Because the plaintiff alleged her injury arose out of the hospital’s failure to inspect and maintain its medical equipment, this court determined the jury required expert testimony regarding the specialized knowledge of how to safely X-ray patients. Id. at 902-04 (¶¶ 4, 8).
¶ 35. In Lyons, a patient fell while being assisted from the restroom. Lyons v. Biloxi H.M.A., Inc., 925 So.2d 151, 152-53 (¶¶ 5-10) (Miss.Ct.App.2006). Although more factually similar than Howell, Lyons is distinguishable on the determinative issue — the allegation of what caused the injury. The plaintiff in Lyons alleged the defendant failed to give her the requisite amount of assistance to the bathroom commensurate with her known medical condition, a hip replacement performed two days earlier. Id. at 152-53 (2, 10). The plaintiff alleged, based on her hip surgery, the physical therapists assisting her should have known she could not hold a standing position while waiting for a wheelchair. Id. at 154 (¶ 16). Further, as in Howell, Lyons’s injury occurred while physical therapists were using a type of medical equipment known as a “gait belt.” Id. at 155 (¶ 19). Because the plaintiff challenged what the physical therapists should have known about her medical condition and took issue with the medical equipment they should have used to transport her, this court found expert testimony was necessary to establish the standard of care. Id. at 155 (¶ 19).
¶ 36. The majority relies on Bell. As in Lyons, the plaintiff in Bell alleged her fall from her hospital bed arose out of a failed assessment of her medical condition. Bell, 523 So.2d at 1032-33. The plaintiff claimed the nurse was negligent in failing to use bed rails because a reasonable nurse would have known the sedative effect of the drugs she administered to the plaintiff. Id. at 1032. And a reasonable nurse would have used bed rails to prevent the sedated plaintiff from falling. Id. The Mississippi Supreme Court determined that “[a] nurse’s decision as to whether or not bed rails should be utilized entails a *1136 degree of knowledge concerning the subject patient’s condition, medication, history, etc” Id. at 1033 (emphasis added). Because the plaintiff was alleging a want of professional judgment, her claim fell within the statutory definition of professional malpractice, requiring an expert to testify about what a reasonable nurse should have known about the plaintiffs condition. Id. at 1032-33.
CROSTHWAIT’S CLAIM
¶ 37. In contrast, Crosthwait does not contend her injury arose based on an erroneous assessment of her medical or physical condition or the failure to provide adequate medical services based on that condition. With respect to the majority, unlike Bell, where the plaintiff alleged the nurse should have used bed rails, Crosth-wait is not claiming she fell because Morgan should have used a better fitting or more appropriate shower chair based on her medical condition. And, unlike the plaintiff in Lyons, who claimed the physical therapists should have known she could not stand, Crosthwait is not claiming Morgan should have made the medical assessment she could not walk on her own. Nor does she allege her injury occurred based on negligent use or non-use of a medical device. In contrast to the X-ray table in Howell, Crosthwait did not fall off the shower chair.
¶ 38. Crosthwait instead complains Morgan took the unreasonable action of allowing a bathroom floor to pool with water and then failed to attempt to provide her safe passage out of the bathroom. She alleges an ordinary, reasonable person, knowing the floor was wet and Crosthwait was barefoot, would have provided her physical assistance or dried the floor. A medical expert is not needed to address what a reasonable hospital employee should have done in the face of such a dangerous condition, as it was not a medical danger Crosthwait claims Morgan should have been aware of and prevented. Cf. Bell, 523 So.2d at 1032.
¶ 39. Other jurisdictions’ treatment of claims involving falls in hospital bathrooms further convinces me Crosthwait’s complaint falls within the ambit of ordinary negligence, not medical malpractice. E.g., Washington Hosp. Ctr. v. Martin, 454 A.2d 306, 308-09 (D.C.1982) (determining the plaintiffs claim that the hospital negligently left him unattended in the bathroom, resulting in his fall and injury, was an “ordinary” negligence case, requiring no expert testimony because the issue was not whether the doctor or nursing staff failed to exercise professional judgment); Brown v. Tift County Hosp. Auth., 280 Ga.App. 847, 635 S.E.2d 184, 186-87 (2006) (reversing summary judgment for the defendant and finding plaintiffs claim — that the therapist who left her unattended in the shower after plaintiff twice complained she was slipping — sounded in ordinary negligence); Self v. Executive Comm. of the Ga. Baptist Convention Ga., Inc., 245 Ga. 548, 266 S.E.2d 168, 169 (1980) (finding the plaintiffs action was for ordinary negligence, not medical malpractice, based on her allegation that the decedent’s injury was caused by the hospital’s negligence in failing to properly repair a leaking bathroom fixture, of which it had notice); Landes v. Women’s Christian Ass’n, 504 N.W.2d 139, 141 (Iowa Ct.App.1993) (holding that the hospital’s taking the plaintiff to the bathroom “was nonmedical or routine”); Kastler, 193 N.W.2d at 102 (holding that a hospital’s giving showers to its patients is not a professional activity); see also St. Mary Med. Ctr. v. Bakewell, 938 N.E.2d 820, 822 (Ind.Ct.App.2010) (finding plaintiffs claim that her injury was caused by the hospital’s negligent maintenance of its shower could proceed as an ordinary premises-liability claim, although originally brought as a medical-malpractice claim).
*1137 ¶ 40. These cases underscore the “mere fact that a patient falls in a hospital” does not in itself determine that a claim is for medical malpractice. See Martin, 454 A.2d at 309. Instead, the controlling question is whether professional skill and judgment were required.
¶ 41. Because I find Crosthwait’s allegations sound in ordinary negligence, I would reverse.
¶ 42. The trial court granted summary judgment for failure to comply with the medical-malpractice statutes and failure to provide expert testimony. Finding such procedures and testimony unnecessary to make a prima facie case, I would remand this matter for a jury to determine whether Morgan breached her duty of ordinary care and, if so, whether such breach was the proximate cause of Crosthwait’s injuries. Therefore, I dissent.
LEE, C.J., AND ROBERTS, J., JOIN THIS OPINION. IRVING, P.J., JOINS WITH SEPARATE WRITTEN OPINION.

. Mississippi Code Annotated section 11 — 1— 58(1) (Supp.2010) uses the same "arising out of the course of medical, surgical or other professional services” language to determine whether the prerequisite of an expert consultation applies to an action against a healthcare provider.