Pamela ABBEY, Appellant,

v.

Michael A. JACKSON, et al., Appellees.

No. 82–1379.

District of Columbia Court of Appeals.

Argued June 23, 1983.

Decided Oct. 30, 1984.

Jonathan M. Owens, Washington, D.C., for appellant.

Kenneth W. Curtis, Burke, Va., for appellees.

Before MACK and NEWMAN, Associate Judges, and URBINA,* Associate Judge, Superior Court of the District of Columbia.

URBINA, Associate Judge:

Appellant Abbey challenges the trial court's summary dispositions of Counts I and II of her amended complaint which alleged medical malpractice in the form of negligent nondisclosure and infliction of emotional distress, respectively. The trial court's granting of summary judgment on Count I resulted from Abbey's failure to declare on her Super.Ct.Civ.R. 26(b)(4) Statement the intended use of expert testimony. On Count I, we reverse, finding that the trial court's summary judgment ruling improperly deprived Abbey of her opportunity to present her case on the merits. We agree with the trial court's dismissal of Count II for failure to state a claim because the count's assertion of negligent infliction of emotional distress was unaccompanied in the record by any cognizable allegation of resultant physical injury.

## I

Appellant, Pamela Abbey, underwent an abortion at the Hillcrest Clinic and Counseling Service on June 27, 1981. Shortly thereafter, appellant experienced complications and was treated for an incomplete abortion at D.C. General Hospital.

On September 10, 1981, appellant filed a complaint against Dr. Jackson and Dr. Ward as owners/operators of Hillcrest Clinic, alleging: (1) negligent malpractice on a res ipsa loquitur theory; and (2) infliction of emotional distress. On May 24, 1982, appellant filed a Rule 26(b)(4) Statement stating that she would not use medical expert testimony at her trial. On July 16, 1982, Abbey filed an Amended Complaint alleging that appellees negligently failed to inform appellant of alternatives to and risks inherent in an abortion procedure. On July 21, appellees filed a Rule 26(b)(4) Statement listing Dr. Sewell and Dr. Ames as experts who might be called to testify.

Pretrial of this action was held on August 4, 1982. Appellees' Pretrial Statement listed four doctors as potential witnesses: Dr. Jackson and Dr. Ward, the

* Sitting by designation pursuant to D.C.Code § 11–707(a) 1981.

defendants; Dr. McLeod, the physician who performed appellant's abortion; and Dr. Kirkpatrick, the physician who treated appellant at D.C. General Hospital.

Appellant's Pretrial Statement included, as potential witnesses: (1) the parties; and (2) all witnesses identified by defendants.

On August 9, 1982, the trial court granted appellees leave to file a Motion for Summary Judgment and granted appellant leave to file a Motion to Amend her Pretrial Statement and her 26(b)(4) Statement. On September 1, 1982, the trial court heard Summary Judgment arguments.

Appellees asserted that they had fully explained to appellant the risks associated with abortions and that appellant had signed a consent form to that effect. In addition, appellees argued that in order to establish a prima facie case of negligent disclosure, appellant was required to establish the existence and nature of risk through expert testimony; and, that because Abbey had failed to amend her 26(b)(4) Statement to list an expert, she was precluded from pursuing her claim.

In opposition to summary judgment, appellant stated in her affidavit that no one at the Clinic discussed the risks of abortions with her; rather: "The lady simply pushed some papers in front of me and told me to sign." Abbey also argued that she would establish the existence of risk, and therefore a prima facie case, by calling as witnesses the four doctors she had adopted by reference as witnesses in her Pretrial Statement.

On September 23, 1982, the trial court granted the Motion for Summary Judgment, stating:

That Plaintiff, having not filed a statement pursuant to Superior Court Civil Rule 26(b)(4), would be unable to establish a prima facie case as to Count I [lack of informed consent] of the Amended Complaint in the premises, pursuant to *Crain v. Allison*, 443 A.2d 558, 563 (D.C. 1982).

Appellant filed a Motion for Reconsideration on September 20, 1982, arguing that: (1) defendant physicians and physicians listed by defendants as ordinary witnesses and adopted by plaintiff could testify as experts regarding the risks associated with abortions; and (2) because these witnesses did not develop their facts or opinions in anticipation of trial, but were ordinary witnesses, plaintiff was not required to list them as expert witnesses on her 26(b)(4) Statement.

The trial court denied appellant's Motion for Reconsideration on September 20, 1982, and this appeal followed.

## II

In *Crain v. Allison*, 443 A.2d 558, 562 (D.C.1982), principally relying on the landmark opinion of *Canterbury v. Spence*, 150 U.S.App.D.C. 263, 464 F.2d 772, *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972), this court held that physicians have a mandatory duty to disclose all material risks to their patients, *i.e.*, risks which a reasonable person would consider significant in deciding whether to undergo a particular medical treatment. Addressing the role of expert testimony in *Crain*, we stated:

Although expert testimony is not needed to establish the scope of the breach of the duty to inform one's patients before treating them, ... expert testimony is necessary to establish the nature and degree of the risks of the proposed and alternate treatments

\*     \*     \*     \*     \*     \*

Although there was no expert testimony on the standard of care of a physician in obtaining informed consent from his patients, there was expert testimony on the actual risks involved. Thus, appellees established a prima facie case of medical malpractice.

*Id.* at 563–64.

The trial court's apparent reliance on the statements quoted above is misplaced. *Crain* merely requires expert testimony to

establish the existence and nature of risk. Appellant in this case clearly apprised the appellees and the trial court of her intention to meét the *Crain* requirement by questioning defendant physicians and defense physician witnesses. Thus, the question before the trial court was not whether experts would testify but whether appellant could rely on defendants and defense witnesses for expert testimony; and, if so, whether plaintiff was required to identify them as expert witnesses on a 26(b)(4) Statement after identifying them in her Pretrial Statement.

A. *Appellant can establish a prima facie case of lack of informed consent through the expert testimony of defendant physicians and defense witnesses without introducing independent medical testimony*

■ Appellant contends that plaintiff, in a medical malpractice case, can establish a prima facie case of lack of informed consent through the expert testimony of defendant physicians and defense witnesses without calling independent experts. The application of the District of Columbia's adverse witness statute, considerations of public policy and fairness, as well as the fact that such is the law in a substantial majority, if not all, other jurisdictions, indicate the validity of appellant's contentions. *See Anderson v. Florence*, 288 Minn. 351, 181 N.W.2d 873 (1970) (J. Nogosheske) (for an especially scholarly discussion of this issue). *See, e.g.,* the following negligent treatment cases: *LaRocque v. LaMarche*, 130 Vt. 311, 292 A.2d 259 (1972); *Console v. Nickou*, 156 Conn. 268, 240 A.2d 895 (1968); *McDermott v. Manhattan Eye, Ear & Throat Hospital*, 15 N.Y.2d 20, 255 N.Y.S.2d 65, 203 N.E.2d 469 (1964); *State v. Brainin*, 224 Md. 156, 167 A.2d 117 (1961); *Lawless v. Calaway*, 24 Cal.2d 81, 147 P.2d 604 (1944) (cited in reverse chrono-

logical order). *See also* the following informed consent cases: *Canterbury v. Spence, supra,* 150 U.S.App.D.C. at 282–83, 464 F.2d at 791–92; *Calabrese v. Trenton State College*, 413 A.2d 315 (N.J.1980); *Sauro v. Shea*, 390 A.2d 259 (Pa.1978); *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676, 688–89 (1972).

■ The adverse witness statute of the District of Columbia states that a party or a party's witness in a civil suit may be called as a witness by his adversary and questioned as to matters relevant to the dispute at issue.[1] The statute makes no exception for information acquired by special training or rendering professional services. Moreover, such an exception would be at odds with the remedial nature and purpose of the adverse witness rule, which is intended to ensure that persons who are eyewitnesses to and participants in the event giving rise to an action fully disclose all matters pertinent and relevant to the issues in dispute. *See, e.g., Lawless v. Calaway*, 24 Cal.2d at 85–86, 147 P.2d at 608–09; *State v. Brainin*, 224 Md. at 161–62, 167 A.2d at 119–20; *McDermott*, 15 N.Y.2d at 28, 255 N.Y.S.2d at 72, 203 N.E.2d at 474. *See also* 2 S. GARD, JONES ON EVIDENCE § 14–18 (6th ed. 1972).

Despite the clear implications of the adverse witness statute, appellees argue that allowing plaintiff to prove a malpractice case solely through defense witnesses is unfair to defendant physicians and will encourage frivolous lawsuits.

■ Whatever may be the validity generally (or lack thereof) of the argument that a lawyer or his client has unfairly avoided the bother and expense of using his own independent experts, this argument has no merit where the witness is not an expert hired by the adversary but is the

---

1. The adverse witness rule in the District of Columbia states: "Except as otherwise provided by law, a person is not incompetent to testify in a civil action ... by reason of his being a party thereto or interested in the result thereof. If otherwise competent to testify, he is competent to give evidence on his own behalf and competent and compellable to give evidence on behalf of any other party to the action...." D.C.Code § 14–301 (1981).

adversary himself or defense witnesses actually involved in the events from which the claim arose. *See Anderson v. Florence, supra,* 181 N.W.2d at 879; *Oleksiw v. Weidener,* 2 Ohio St.2d 147, 207 N.E.2d 375 (1965). Defendants in a civil suit, unlike a criminal case, have no inherent right to remain silent or to answer only those inquiries which will have no adverse effect on their case. *McDermott,* 15 N.Y.2d at 28, 255 N.Y.S.2d at 72, 203 N.E.2d at 474. Nor do witnesses with personal knowledge of relevant facts have a right to refuse to testify on the ground that the answer will be "expert" evidence and they have received no expert witness fee. JONES ON EVIDENCE, *supra,* at § 14–18.

■ To meet the expert testimony requirement of *Crain, supra,* Abbey must establish, through expert testimony, the presence and type of risks associated with abortions. The parties in this case, however, do not dispute the existence and nature of risks in an abortion. The appellees allege that Abbey was fully informed of the risks of abortion; whereas Abbey alleges she received no information. Thus, the cogent question in this case is one of credibility, traditionally the province of the jury, and the need for and role of expert testimony is extremely limited. Indeed, some courts have treated defendants' testimony of full disclosure as an admission of their duty to disclose that eliminates the need for expert testimony. *See Mitchell v. Robinson,* 334 S.W.2d 11 (Mo.1960); *Woods v. Brumlop,* 77 N.M. 221, 377 P.2d 520 (1962). Assuming, however, that appellant must establish risk by expert testimony, Abbey need only question defendants or defense witnesses who are "experts". As already discussed, the physicians who were participants or eyewitnesses in the events leading to this cause of action cannot refuse to

testify on pertinent and relevant issues merely because their information is the result of professional training. D.C.Code § 14–301 (1981).

■ The primary purpose of the expert testimony requirement is not to screen unjust claims, but rather to aid the jury in reaching a just decision on complex, technical issues. Allowing plaintiffs in the appropriate case to prove a malpractice claim through the expert testimony of defendant physician or defense witnesses is not only consistent with the purposes of the expert testimony requirement and the adverse witness rule, but ensures, as far as possible, that a patient's just claim will not fail for want of available independent medical testimony.

B. *Appellant is not required to list defendants and defense witnesses as experts on a 26(b)(4) Statement*

Appellant argues that she need not list experts by name on her 26(b)(4) Statement because each of the experts she intended to call was either:

(1) listed on appellees' 26(b)(4) Statement which she had adopted in her Pretrial Statement;[2] (2) a defendant and thus could be compelled to testify;[3] or (3) an ordinary witness and thus outside of the Rule.[4]

■ Appellant's argument is supported by the language and purpose of Rule 26(b)(4) as well as authorities interpreting this Rule. Rule 26(b)(4) governs the discovery of facts and opinions held by experts which were *"acquired or developed in anticipation of litigation"*. Super.Ct. Civ.R. 26(b)(4) advisory committee notes (1972) (emphasis added); C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2029 at 240 (1970). The Advisory Com-

---

**2.** These witnesses were Dr. Sewell and Dr. Ames.

**3.** D.C.Code § 14–301 (1981).

**4.** These witnesses were Dr. McLeod who performed the abortion and Dr. Kirkpatrick who provided emergency treatment at D.C. General Hospital.

mittee to the Federal Rules of Civil Procedure state that Rule 26(b)(4), "... does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." Fed.R. Civ.P. 26(b)(4) advisory committee note (1970).[5] *Accord,* C. WRIGHT & A. MILLER, *supra,* § 2033 at 258. (A doctor in a malpractice suit who is an expert is not within the scope of Rule 26(b)(4)).

In this case, appellee physicians and physicians listed as ordinary witnesses by appellees were participants in the events leading to this lawsuit. Moreover, their expertise regarding risks in abortion procedures was not developed in anticipation of litigation. Thus, appellant was not required to list them on a 26(b)(4) Statement.

The last two witnesses at issue are Dr. Sewell and Dr. Ames, listed as expert witnesses by appellees on their 26(b)(4) Statement. Appellant, by adopting in her Pretrial Statement any witnesses called by appellees, reserved the right to question these experts as witnesses. Appellant is not further required to reiterate her intent in a 26(b)(4) Statement. Indeed, requiring one party to list the opposing party or the opposing party's witnesses on a 26(b)(4) Statement appears incongruous when one examines the purposes of Rule 26(b)(4).

Rule 26(b)(4) is intended to narrow issues for trial, facilitate cross-examination and encourage settlements. Fed.R.Civ.P. 26(b)(4) advisory committee note (1970). *See Greyhound Lines, Inc. v. Miller,* 402 F.2d 134 (8th Cir.1968) (purposes of modern discovery rules). To this end, a party must identify those experts he intends to use at trial so that the opposing party has an opportunity to examine the expert's background and opinion prior to trial. Presumably, a party knows his own background and opinion, as well as those of his own witnesses.

Finally, appellees cannot validly complain of surprise in this case. Appellant's Pretrial Statement listed the parties as well as any witnesses listed by appellees. As discussed previously, appellant can question these witnesses regarding any relevant information, without regard to the fact that the information is considered "expert". D.C.Code § 14–301 (1981). If this notice is considered too oblique, appellant's summary judgment argument clearly communicated her intention to question appellees as well as appellees' witnesses as experts.

## III

■ Appellant further maintains that the trial court erred in failing to recognize Count II as asserting the alternative theories of intentional or negligent infliction of mental distress. A plain reading of the language of Count II eliminates alternative interpretations of its allegations. Count II reads in relevant part:

Defendant's acts amounted to gross negligence of his duty and was in callous disregard of Plaintiff's rights, health, and well-being; Defendant Jackson knew or should have known the consequences of his failure to appear.

We agree with the trial court's conclusion that the count claimed recovery based exclusively on the theory of negligent infliction of emotional distress. The asserted cause of this alleged injury, appellee-Jackson's failure to appear at his office to treat Abbey, did not meet the legal standard for an action claiming negligent infliction of emotional distress as set out in *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980). *Waldon* instructs that a plaintiff alleging negligent infliction of emotional distress

---

**5.** The District of Columbia, having adopted the Federal Rules of Civil Procedure, construes its rules in light of the meaning of the Federal Rules. *See* D.C.Code § 11–946 (1981); *Varela v. Hi-Lo Powered Stirrups, Inc.,* 424 A.2d 61 (D.C. 1980).

must also allege a resultant physical injury. *Id.* Nowhere in the record did Abbey allege a worsening, aggravation, augmentation, or increase in severity of her condition as a result of Dr. Jackson's behavior. Accordingly, the trial court ruled, and we agree, that Count II should be dismissed for failure to state a claim upon which relief could be granted.

*Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.*