**Richard EIBL, Appellant,**

v.

**Leonard KOGAN, and Washington Hospital Center, Appellees.**

**No. 84–990.**

District of Columbia Court of Appeals.

Argued March 19, 1985.

Decided April 5, 1985.[*]

---

* This case was originally issued as an unpublished Memorandum Opinion and Judgment. Appellees' motion for publication has been granted by the court.

Robert L. Walsh, Silver Spring, Md., for appellant.

W. Scott Sonntag, Upper Marlboro, Md., for appellee Leonard Kogan.

James P. Schaller, Washington, D.C., with whom Timothy R. Dingilian, Rockville, Md., was on the brief for appellee, Washington Hospital Center.

Before MACK and BELSON, Associate Judges and REILLY, Chief Judge, Retired.

PER CURIAM:

The issue at the heart of this appeal is whether the trial court erred in granting summary judgment to appellees on the basis of its conclusion that appellant would be unable to establish a *prima facie* case of medical malpractice because he failed to obtain a medical expert who could testify on his behalf. We affirm.

Appellant sought medical attention after a fragment of a bullet with which he was playing lodged in the interior of his left eye. He was initially treated at the Washington Adventist Hospital where it was determined that the type of surgery he required was beyond the capabilities of that facility. Appellant was then transferred to the Washington Hospital Center where appellee Kogan performed surgery on the eye but was unable to locate and extract the fragment because of bleeding in the operative site. Subsequent to his discharge from the Hospital Center, appellant underwent successful surgery for the removal of the fragment at another hospital. The surgery was ineffective, however, in restoring vision to the left eye. Appellant then filed a two count medical malpractice complaint against appellees. In count one he alleged negligence in the pre-operative, operative, and post-operative treatment he received;[1] in count two he alleged appellees failed to obtain his informed consent. Appellees' motions for summary judgment were initially denied by the trial court on the condition that appellant name an expert witness by the time of pretrial. When appellant was unable to do so, the motions were granted.

Before this court, appellant argues, as he did below, that as a result of the unsuccessful initial surgery, he suffered "further trauma, irritation, tearing and injury to the eye and damage to the retina."

■ We begin by noting, as we did in *Morrison v. MacNamara*, 407 A.2d 555 (D.C.1979), that "[t]he elements which govern ordinary negligence actions are also applicable in actions for professional negligence. The *plaintiff bears the burden* of presenting evidence 'which establishes the *applicable standard of care*, demonstrates that this standard has been violated and develops a causal relationship between the violation and the harm complained of.'" *Id.* at 560 (quoting *Kosberg v. Washington Hospital Center, Inc.*, 129 U.S.App.D.C. 322, 324, 394 F.2d 947, 949 (1968) (emphasis added)).

■ While expert testimony may not be required in every medical malpractice case, in a case such as this, where the surgical procedure complained of is "beyond the ken of the average layman," *Waggaman v. Forstmann*, 217 A.2d 310, 311 (D.C.1966), it is incumbent upon the moving party, in order to present a *prima facie* case of negligence, to establish, by expert testimony, the standard of care applicable to performance of the procedure and causation.[2] *See Sponaugle v. Pre-Term, Inc.*,

1. In the alternative, appellant argues the doctrine of *res ipsa loquitur* is applicable to the facts of this case.

2. In the proceedings in the trial court, appellant suggested that he might establish his *prima facie* case by cross-examination of appellees' experts. During the period between the disposition of the case at the trial level and argument before this court, we have concluded, in *Abbey v. Jackson*, 483 A.2d 330 (D.C.1984), that "[a]llowing plaintiffs *in the appropriate case* to prove a malpractice claim through the expert testimony of defendant physician or defense witnesses is ... consistent with the purposes of the expert testimony requirement...." *Id.* at 334 (emphasis added). While *Abbey* was clearly such an appropriate case, it is readily distinguishable from

the present case. In *Abbey* the "cogent question" was one of credibility, *id., i.e.* whether or not appellant, the plaintiff below, had been informed of alternatives and risks to an abortion procedure. Thus, the situation there was no different from any case in which adverse parties differ as to facts giving rise to a suit. As the court noted, such questions of credibility are traditionally within the jury's province. As such, the need for expert testimony is extremely limited. *Id.*

Here, however, the question at issue is not one traditionally within the province of the jury, but is, rather, one which goes to the performance of a medical procedure, the applicable standard of care and whether there was any deviation from that standard. As the trial court

411 A.2d 366 (D.C.1980). As we have noted in a more recent case,

"[I]f a case involves the merits and performance of scientific treatment, complex medical procedures, or the exercise of professional skill and judgment, a jury will not be qualified to determine whether there was unskilled or negligent treatment without the aid of expert testimony."

*Washington Hospital Center v. Martin*, 454 A.2d 306, 308 (D.C.1982) (quoting *Harris v. Cafritz Memorial Hospital*, 364 A.2d 135, 137 (D.C.1976), *cert. denied*, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977)).

In *Martin*, the issues were ones which the jury could resolve through application of its common knowledge. There suit was brought by a patient who alleged that she fell out of bed and was injured as a result of the fall because the hospital was negligent in failing to protect her from falling. The hospital argued that it had not been negligent and that the patient had been placed in restraints to prevent just such an accident. Thus the issues in that case were (1) whether the patient was under restraints prior to the fall and (2) if not, whether the hospital was negligent in leaving the patient unattended.

We concluded there that expert testimony was neither necessary nor helpful, as the case was an " 'ordinary' negligence case, in which jurors may apply their own experience in deciding how any reasonably prudent person would have acted under the circumstances." *Id.* at 309 (citations omitted).

The differences between that situation and the one presented by this case are apparent. In this case, appellant's unfortunate accident exposed him to a complex invasive procedure which required the application of both professional experience and highly technical equipment. It is, therefore, a case in which the issue to be presented to the jury involved " 'the merits and the performance of scientific treatment' " and complex medical procedure and thus required "expert testimony for its resolution." *Id.* (footnote omitted).[3] In light of appellant's failure to name a potential medical expert, the trial court properly granted summary judgment. *See E.P. Hinkel & Co. v. The Manhattan Co.*, 165 U.S.App.D.C. 140, 506 F.2d 201 (1974).

---

concluded, and the record confirms, this is not a case in which a plaintiff might reasonably be expected to elicit, on cross-examination, testimony from which a jury might glean support for his contention. As such it is not the "appropriate case" for cross-examination of defense experts envisioned by *Abbey v. Jackson, supra.*

**3.** For the same reasons, appellant failed to show that he could establish a *prima facie* case under his second count since under these circumstances only an expert could speak to risks and alternatives pertinent to informed consent. Moreover, because a jury would be unable to infer negligence, appellant failed to show that he could establish a *prima facie* case under the doctrine of *res ipsa loquitur.*