30 F.3d 133
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald HAYDOO, et al., Plaintiffs-Appellants,
v.
GENERAL ELECTRIC, et al., Defendants-Appellees.
 No. 93-3367.
 United States Court of Appeals, Sixth Circuit.
 June 21, 1994.
 
 Before: KEITH and SUHRHEINRICH, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs ("Plaintiffs") appeal the district court's dismissal of their action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b). For the reasons stated below, we AFFIRM the dismissal.
 
 I. Statement of the Case
 
 2
 This action arose from Defendant General Electric's decision to close the Cleveland Equipment Plant ("CEP") as part of a general restructuring. Plaintiffs include 110 former CEP employees. Before General Electric ("GE") closed CEP, the plant employed approximately 240 hourly, union represented employees. With five exceptions, all Plaintiffs were terminated when the plant closed on December 2, 1987.[2]
 
 
 3
 The matter before this court is whether the district court properly dismissed this case for dilatory case management pursuant to Fed.R.Civ.P. 41. We, therefore, must detail the action's four-year procedural history.
 
 
 4
 On December 27, 1988, Plaintiffs first filed this action in Ohio state court, on behalf of the primary named Plaintiff, Donald Haydoo, and ten other Plaintiffs. The Defendants included GE, GE's Chief Executive Officer Jack Welch ("Welch"), the International Union of Electronic, Electrical, Technical Salaried and Machine Workers, AFL-CIO ("IUE"), the Pension Board of General Electric Pension Fund ("Pension Fund"), and unknown Defendants. The Defendants removed the action to the Federal District Court for the Northern District of Ohio and Plaintiffs subsequently filed their "First Amended Complaint" adding 100 new plaintiffs and ten counts.
 
 
 5
 Most counts challenged the plant closing. All plaintiffs alleged they were former CEP employees and GE shareholders. Based upon their former employment and relationship with GE, Plaintiffs alleged violations of the National Labor Relations Act, 29 U.S.C. Sec. 158 ("NLRA"); Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185 ("LMRA"); the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001, et seq. ("ERISA"); and the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. ("ADEA"). Plaintiffs also asserted various pendent state claims including an Ohio statutory shareholders' derivative action.
 
 
 6
 In their complaint, Plaintiffs argued GE violated the National Bargaining Agreement by closing CEP and contracting out to other companies when the work could have remained at CEP. Plaintiffs next alleged GE withheld information about pension rights stemming from the closing. Further, Plaintiffs argued that, although GE planned to close CEP, management allowed persons who were unaware of the scheduled closing to retire earlier and lose benefits linked to the plant closing. Finally, the complaint alleged that the closing disparately impacted employees over the age of 40. With respect to IUE, Plaintiffs claimed the closing of CEP violated the labor agreement between IUE and GE, and IUE should have prevented the closing.
 
 
 7
 On July 24, 1989, GE, Pension Fund, and Welch each filed motions to dismiss counts 4-9. These counts included five state law claims and a shareholder derivative claim. The Defendants asserted: (1) the shareholder derivative claim did not meet Rule 23.1 pleading requirements, and was barred by conflicts of interest; (2) the remaining state law claims were preempted by ERISA, or the NLRA; and, alternatively, (3) the state claims were subject to dismissal because Plaintiffs had not pleaded and could not prove the elements of the claims.
 
 
 8
 In response, Plaintiffs filed motions seeking to: (1) amend the complaint for the second time; (2) disqualify Defendants' attorneys; (3) certify classes of Plaintiffs; and (4) depose Welch pursuant to Fed.R.Civ.P. 56(f). Later, in September 1989, Plaintiffs filed a "Brief in Opposition" to Defendants' motion for summary judgment. This "brief" included a cartoon, a paraphrase of Shakespeare, a quote from one Plaintiff, and two conclusory allegations stating: "plaintiffs have presented the basic facts and law to support the elements of their claim." The brief primarily sought further discovery pursuant to Rule 56(f).[3] In addition, Plaintiffs filed a "Response to Motion of Defendants" which, without analysis, simply concluded that state law claims were not preempted. No filings responded to Defendants' legal arguments.
 
 
 9
 Further, Plaintiffs filed "exhibits" including an anonymous and altered deposition, and eight volumes of signed employee questionnaires with unsworn and unauthenticated attachments such as payroll forms, newspaper clippings, and individual damages information. Neither the attached affidavits nor the "exhibits" addressed any of Defendants' arguments. Defendants finally requested Rule 11 sanctions.
 
 
 10
 On May 10, 1990, the district court assigned the matter to a magistrate judge. Subsequently, upon Plaintiffs' request, the Clerk of the District Court issued approximately 800 subpoenas on foreign banks located beyond the jurisdiction of the court. In response, Defendants moved for a protective order and sanctions.
 
 
 11
 On June 26, 1990, the magistrate judge held a conference and granted Plaintiffs leave until July 15 to file a Third Amended Complaint--presumably to allow Plaintiffs to properly plead ERISA claims. On July 23, Plaintiffs' counsel advised the magistrate judge by letter that he was extending the deadline to amend to August, 15, 1990.[4] Over four months after the original deadline, on November 29, 1990, Plaintiffs finally filed their "Motion to Amend for the Third Time." The proposed complaint reitorated earlier allegations and added seven additional counts, four additional Plaintiffs, and thirteen additional Defendants.
 
 
 12
 The seven new counts alleged ERISA and RICO violations and primarily implicated the members of GE management named as new Defendants. In opposition, Defendants argued the new counts did not arise from the same transaction as the previous counts--the plant closing--and that any evidence necessary to adjudicate the new counts did not overlap with the original evidence.
 
 
 13
 On December 19, 1990, Defendants filed a motion for summary judgment on the remaining four counts of the First Amended Complaint--counts 1, 2, 3, and 10 which included claims based on Sec. 301 of the LMRA, age discrimination claims under the ADEA and Ohio discrimination law, and a vague ERISA claim. The magistrate judge granted Plaintiffs a sixty-day extension to respond. On February 12, 1991, Plaintiffs filed a "response" devoid of any responsive legal arguments save a conclusory statement that the case was not "ripe" for summary judgment. Plaintiffs also requested discovery pursuant to Rule 56(f) and incorporated, by reference, a September 1989 discovery request.
 
 
 14
 At the end of March 1990, the magistrate judge addressed the above motions within a series of Memorandum Opinions and Reports and Recommendations. The Orders were as follows:
 
 
 15
 (1) on March 22, 1991, finding the new counts exceeded the scope of the original lawsuit, the magistrate judge denied Plaintiffs' motion for leave to file a Third Amended Complaint but granted Plaintiffs thirty days to amend with a state law age discrimination claim;[5]
 
 
 16
 (2) on March 26, in a very detailed opinion, the magistrate judge denied Plaintiffs' Rule 56(f) motions and granted Plaintiffs thirty days to respond to Defendants' motions for summary judgment;
 
 
 17
 (3) on March 27, the magistrate judge denied Plaintiffs' motion to disqualify Defendants' counsel;
 
 
 18
 (4) on April 4, the magistrate judge denied Defendants' motions to strike Plaintiffs' exhibits and affidavits finding the materials were "entirely worthless," and would be ignored, and held Defendants' sanctions motion in abeyance; and
 
 
 19
 (5) on April 4, the magistrate judge found the class representative inadequate and denied Plaintiffs' motion for class certification, but granted leave to substitute new class representatives within ten days.[6]
 
 
 20
 Within each report, the magistrate judge specifically noted any inadequacies of Plaintiffs' pleadings and claims, detailed how to cure such problems, and granted leave to amend accordingly. Specifically, the magistrate judge gave Plaintiffs until April 25, 1991 to file a supplemental response to Defendants' summary judgment motions; until April 15, 1991 to designate new class representatives; and until April 21, 1991 to amend their state age discrimination claim.
 
 
 21
 On April 16, 1991, Plaintiffs' counsel sought an extension to respond or otherwise "comply" with the issued orders. On April 18, the magistrate judge extended the response time until May 15 and endorsed the letter: "No further extensions will be allowed." On May 15, 1991, the secretary for Plaintiffs' counsel phoned the magistrate judge claiming computer complications and obtained an extension until May 20. On May 20, Plaintiffs' counsel called and wrote to the magistrate judge's chambers alleging a computer virus and informing the magistrate judge that he intended to take an extension until May 27, 1991. On May 28, Plaintiffs' counsel wrote the magistrate judge explaining his residence had been burglarized--with the only property taken being documents and computer disks relevant to this case--and communicating his "requirement to have [until June 27, 1991] to file responses and documents due to this court."
 
 
 22
 On May 31, 1991, the magistrate judge addressed Plaintiffs' request within a Memorandum Opinion and Order and stated although he was sympathetic to counsel's misfortunes, the nature of the three requested submissions did not warrant the relief requested. The magistrate judge found counsel should have been able to generate such pleadings at the time he originally sought leave to amend the third complaint. Further, the magistrate judge found the summary judgment motions primarily presented questions of law and counsel had known for over ninety days that he was required to respond without further discovery. The magistrate judge described counsel's behavior as "a classic exercise in foot dragging" and noted that the burglary could not excuse his prior dilatory behavior.
 
 
 23
 Showing the same leniency and concern for the Plaintiffs as he had throughout the case, however, the magistrate judge granted Plaintiffs a partial extension. Specifically, the magistrate judge imposed "one further, final, inflexible extension for the filing of all required submissions to June 12, 1991." (Emphasis added.) The order also provided that failure to submit responses by June 12 would result in a denial of the motion to amend; a recommendation to grant summary judgment for lack of opposition; and a recommendations to deny class certification en toto. June 12 came and went without any response by the Plaintiffs. As promised, on June 27, the magistrate judge recommended: (1) granting summary judgment for lack of opposition; (2) denying Plaintiffs' motion for class certification; and (3) denying Plaintiffs' motion for leave to amend.
 
 
 24
 On June 28, 1991, Plaintiffs filed three pleadings. The first two consisted of objections to the magistrate judge's rulings, and a motion for class certification without substituting class representatives as required. The third filing was a one page "brief" opposing summary judgment based on Rule 56(f). Within this untimely filing, Plaintiffs argued they previously submitted a consolidated brief, ten volumes of evidence, and a short response which sufficed as responses to Defendants' motions. Plaintiffs "incorporated" the previous filings and referred to various other documents and affidavits. In sum, the Plaintiffs, resting on prior submissions, offered no material issues of fact or legal analysis responding to Defendants' assertions.
 
 
 25
 On July 10, 1991, Plaintiffs filed a request for reconsideration and modification of orders and objections to the reports and recommendations. Plaintiffs' counsel stated that he was "shocked" by the June 27 order denying leave to amend and alleged he did not receive the May 31 order until July 8 because it had been damaged and delayed in delivery. Plaintiffs' counsel also asserted:
 
 
 26
 This Court has issued an Order with a report recommendation that Summary Judgment be granted for Defendants on all counts stating that Plaintiffs have failed to respond and such Motions must "be granted for want of opposition". (sic)
 
 
 27
 * * *
 
 
 28
 * * *
 
 
 29
 The Court states further, that "No response to Defendants' Motion was filed by June 12th or to this date". (sic) Plaintiffs object to this ludicrous misstatement of the facts and show of prejudice on behalf of the Court as well as the Courts refusal to consider 10 volumes of evidence that Plaintiffs filed in response to Defendants' Summary Judgment Motions earlier, the Consolidated brief filed 9/11/89, document # 86, Response to Summary Judgment filed 9/11/89, document # 77, Response to Summary Judgment filed 2/12/91, document # 173, and the responses filed the date this Order was issued.
 
 
 30
 On December 30, 1992, the district court adopted the magistrate judge's recommendations for the denial of leave to amend, denial of class certification and denial of certain of Defendants' motions. After discussing the dilatory prosecution of the case, and agreeing with the magistrate judge's account of Plaintiffs' contumacious conduct, foot dragging, and failure to comply with numerous deadlines, the district court dismissed the case. The district court also dismissed the Defendants' summary judgment motions and thus did not grant summary judgment for want of opposition. The court stated:
 
 
 31
 The Magistrate Judge's position [regarding the dilatory actions of plaintiffs' counsel] is well taken. Procedural rules, although sometimes mechanical, have to be enforced and it is the Judge's responsibility to balance the enforcement of rules with the concern of providing a fair opportunity to be heard and considered on the merits. Plaintiff's (sic) counsel in this case had ample opportunity to be heard and the dilatory management of the case by him cannot be overlooked. Therefore, the Report and Recommendations issued by Magistrate Judge David S. Perelman are adopted and approved and the case is dismissed. All other motions are denied and overruled, including the motion by plaintiff's (sic) to strike defendant's affirmative defenses and the motion of defendants's (sic) to dismiss. The Court will consider reinstating the case, within 30 days of this Order, upon motion by the plaintiff certifying that all briefing has been completed, all discovery requests complied with, and that in the future counsel will attend to all time-lines established for case management.
 
 
 32
 (Emphasis added.)
 
 
 33
 Thus, the district court gave Plaintiffs yet another chance to complete their filings. On February 25, 1993, the district court denied Plaintiffs' motion to reinstate and dismissed the action. Plaintiffs then filed four notices of appeal. They voluntarily dismissed three notices and this appeal followed.
 
 III. Discussion
 
 34
 Although Plaintiffs raise 25 issues of error[7] on appeal, the only relevant issue before us is whether Plaintiffs' dilatory prosecution of the case warranted dismissal pursuant to Fed.R.Civ.P. 41(b).
 
 
 35
 A. The District Court Properly Referred the Case to a
 
 Federal Magistrate Judge
 
 36
 Plaintiffs first argue the case was not properly referred to the magistrate judge and that the magistrate judge exceeded the bounds of his jurisdiction over general pre-trial matters by issuing a recommendation about summary judgment. This argument lacks merit. The district court properly referred the matter to the magistrate judge for pre-trial supervision in compliance with 28 U.S.C. Sec. 636. Further, the magistrate judge's reports and recommendations did not exceed his authority. Finally, the district court's review and adoption of the magistrate judge's findings complied with all applicable statutes and local rules. See, e.g., Applegate v. Dobrovir, Oakes & Gebhardt, 628 F.Supp. 378 (D.D.C.1985), aff'd, 809 F.2d 930, cert. denied, 481 U.S. 1049 (1987).
 
 
 37
 B. Dismissal Pursuant to Fed.R.Civ.P. 41(b) Was Proper
 
 
 38
 1. The District Court Did Not Dismiss Based on a Local Rule
 
 
 39
 Plaintiffs erroneously argue the district court dismissed the case for failure to comply with a local rule requiring the filing of objections within ten days. This is not the case. Although the district court noted a local rule requires filing objections within ten days, the district court did not find Plaintiffs' objections were untimely. Instead, the court dismissed the action based on prior dilatory case management and the failure to comply with the magistrate judge's orders.
 
 
 40
 2. The District Court Did Not Grant Summary Judgment
 
 
 41
 Plaintiffs next argue the district court erroneously granted summary judgment for want of opposition without considering responses to Defendants' motions to dismiss. This argument must fail. Here, the district judge specifically denied Defendants' motions to dismiss and, therefore, did not grant summary judgment for want of opposition.
 
 
 42
 3. The District Court Properly Dismissed Pursuant to Rule 41(b)
 
 
 43
 Rule 41(b) of the Federal Rules of Civil Procedure authorizes dismissal "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court." The Supreme Court recognized that the inaction or dilatoriness of parties authorizes courts to sua sponte dismiss for lack of prosecution. See Link v. Wabash Railroad Co., 370 U.S. 626, 630 (1962). The Court further stated that this authority arises from the " 'inherent power,' not vested by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id.
 
 
 44
 Absent an abuse of discretion, we will not reverse a decision to dismiss pursuant to this rule. See Little v. Yeutter, 984 F.2d 160 (6th Cir.1993). When assessing a Rule 41 dismissal, however, we must balance the district court's need to manage its docket, the public's interest in "expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims," against the policy favoring resolving cases on their merits. Little, 984 F.2d at 162 (citations omitted).
 
 
 45
 Although the Supreme Court specifically noted that the "absence of notice as to the possibility of dismissal" does not "necessarily render such a dismissal void," Link, 370 U.S. at 632, we have expressed a preference that notice be given or that clear evidence exists detailing "bad faith and contumacious conduct." Harris v. Callwood, 844 F.2d 1254 (6th Cir.1988). Further, because dismissal is a harsh sanction, we have held that dismissal is proper only in "extreme situations where there is a showing of a clear record of delay or contumacious conduct by the plaintiff." Id. (citing Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir.1991)); see also Patterson v. Township of Grand Blanc, 760 F.2d 686, 689 (6th Cir.1985); and Carter v. City of Memphis, 636 F.2d 159, 161 (6th Cir.1980). Without a clear record of delay, we have required the imposition of a lesser sanction.
 
 
 46
 As the Supreme Court explained, dismissal need not rest on one particular action but a court could reasonably infer a failure to prosecute where "the drawn-out history of the litigation" indicates "that the petitioner had ... deliberately proceed[ed] in a dilatory fashion." Link, 370 U.S. at 633. In Carter we discussed what instances amounted to a record of delay and found that
 
 
 47
 the key is a failure to prosecute, whether styled as a failure to appear at a pre-trial conference, failure to file a pre-trial statement, failure to prepare for a conference, or failure to comply with the pretrial order.
 
 
 48
 636 F.2d at 161 (citing J.F. Edwards Constr. Co. v. Anderson Safety Guard Rail Corp., 542 F.2d 1318, 1323 (7th Cir.1976)).
 
 
 49
 Similarly, we found a clear record of delay where Plaintiffs' counsel failed to respond to a show cause order, failed to provide the court with his change of address, failed to file necessary documents, and never responded to defendant's motion to dismiss. See Buck v. Dept. of Agriculture, 960 F.2d 603, 608 (6th Cir.1992). We have also held that Rule 41 dismissal is proper where a movant's behavior is intentionally thwarting or shows "a reckless disregard for the effect of its conduct on the proceedings." See Shepard Claims Service, Inc. v. William Darrah & Associates, 796 F.2d 190, 195 (6th Cir.1986).
 
 
 50
 Here, the district court gave the Plaintiffs notice their action was in jeopardy. The clear record of delay is undeniable. For over three years, Plaintiffs missed deadlines, filed inadequate motions and responses, and disregarded specific orders from the magistrate judge. After Defendants filed two sets of summary judgment motions, Plaintiffs filed ten volumes of unauthenticated and unreliable documents and short "briefs" lacking responsive arguments. Although the magistrate judge showed considerable patience and tried to guide Plaintiffs in amending their filings, the Plaintiffs never complied with the magistrate judge's suggestions about how to plead a meritorious case.
 
 
 51
 Finally, after the magistrate judge had granted three extensions based on questionable excuses, he imposed a final, inflexible deadline that Plaintiffs ignored. While we are sympathetic to Plaintiffs' counsel's argument that he never received the magistrate judge's order imposing a final inflexible deadline, this does not excuse his ignorance of the deadline. In fact, the record reflects consistent contact between Plaintiffs' counsel and the magistrate judge's chambers. When counsel did not receive a response to his last extension request, he should have verified his filing deadlines. Regardless, Plaintiffs failed to respond until 16 days after the final deadline.[8]
 
 
 52
 Plaintiffs engaged in over three years of missed deadlines. Further, the documents Plaintiffs filed were woefully inadequate. Under the circumstances and the history of this case, the dismissal was not an abuse of discretion.[9]
 
 III. Conclusion
 
 53
 For the reasons stated above, we AFFIRM the judgment dismissing this action pursuant to Fed.R.Civ.P. 41(b) entered by the Honorable Thomas D. Lambros, United States Chief District Judge for the Northern District of Ohio.
 
 
 
 *
 The Honorable Charles W. Joiner, United States Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Plaintiffs Spotts, Hudak, Mackura, and Malm, all voluntarily retired during the first five months of 1987, and Bowman's employment terminated automatically upon the expiration of his two-year unpaid leave of absence
 
 
 [3]
 Although Plaintiffs claimed to need additional discovery to oppose the summary judgment motion, two Plaintiffs indicated in affidavits that they had "knowledge of facts" sufficient to defeat all of GE's claims
 
 
 [4]
 The established practice for receiving extensions from this Magistrate was through informal ex parte communications
 
 
 [5]
 The history of Plaintiffs' complaints is helpful. First, the Plaintiffs filed a "First Amended Complaint" after removal. Subsequently, Plaintiffs filed a "Motion to Amend Complaint for the Second Time." This motion was later subsumed by the "Motion to Amend for the Third Time." The magistrate judge denied the motion to amend for the third time except as to an Ohio Age Discrimination claim which was granted conditioned upon clarification of the allegations
 
 
 [6]
 This ruling was erroneously issued as a Memorandum Opinion and Order and was later reissued as a Report and Recommendation
 
 
 [7]
 The Plaintiffs specifically argue the trial court erred by: (1) erroneously relying upon a local rule in dismissing the case; (2) finding Plaintiffs' objections were untimely; (3) adopting and approving the reports and recommendations concerning summary judgment and (4) dilatory management; (5) refusing to reinstate the case; (6) by adopting and approving the magistrate judge's Report and Recommendation without conducting a careful and complete review of all evidence contained in the record; (7), (8), and (9) failing to conduct a de novo review of the magistrate judge's determinations; (10) not considering Plaintiffs' objections filed before the magistrate judge's rulings; (11) adopting the magistrate judge's reports where the Magistrate exceeded his authority; (12) not removing Plaintiffs' counsel to assure adequate representation; (13) adopting the magistrate judge's recommendations concerning plaintiffs' motion alleging defendants' counsel's conflict of interest; (14) denying Plaintiffs' Rule 56(f) motion; (15) denying Plaintiffs' motion to amend their complaint; (16) determining the class representatives were inadequate; (17) denying Plaintiffs' ERISA claim; (18) denying Plaintiffs' motion to amend claim for the third time; (19) denying Plaintiffs' motion for discovery; (20) denying Plaintiffs' motion to correct the record; (21) denying Plaintiffs' motion to compel the deposition of John Welch; (22) denying Plaintiffs' motion to compel interrogatory answers; (23) denying Plaintiffs' motion to disqualify defendants' counsel for conflict of interest; (24) denying Plaintiffs' motion requiring the appearance of John Welch for deposition; and (25) denying the request of a bankruptcy trustee for a defendant to be joined as a party to this suit
 
 
 [8]
 Assuming their response had been timely, these responses were again inadequate
 
 
 [9]
 Plaintiffs also argue the district court erred by not reinstating the case. Because the initial dismissal was proper, the failure to reinstate is moot